I understand all the Council are present and we can dispense with the reading of the roll. We are joined by remote audio by Judge Cabranes, who is the third member of the panel. And if I could just confirm, Judge Cabranes, can you hear us? Yes, you can. Thank you very much. Okay, very good. So I would ask Council, the sequence in which we are going to proceed, because we do have two amici with us today, is the order in which it appears on the calendar. So we're going to first hear from Sessa, then we're going to hear from the government, then we're going to hear from TransUnion, and then we're going to hear from the Chambers of Commerce. Is that clear? The only party who will be allowed to reserve time for rebuttal will be the appellant. The amici will not be able to reserve time, and obviously not the appellant. Is that all clear? I would ask you, when you come to the podium, to the right is a switch that raises and lowers the podium. Please feel free to take a moment to get it to the correct height so that the microphone is directly aimed at you. Keeping in mind, we're streaming the audio, and of course, we want to make sure that our remote panel member can hear you at all times. So with that, I believe we are starting with Mr. Wessler, is that right? Yes, your honor. And you would like to reserve three minutes of rebuttal time. With the court's permission, yes. Absolutely, please proceed. May it please the court, Matthew Wessler for the appellant, Gia Sessa. Section 1681EB of the Fair Credit Reporting Act imposes a specific obligation on credit reporting agencies to assure maximum possible accuracy of the information contained in credit reports about consumers. Earlier this year, in Mater versus Experian Information Services, this court set out the controlling framework for evaluating the only issue decided by the district court below, which is whether TransUnion's report that Ms. Sessa owed a balloon payment debt on her car lease was inaccurate within the meaning of the FCRA. In Mater, this court held that for claims that involve a credit reporting agency's obligations under 1681EB, an inaccuracy within the meaning of that provision includes any false statement that can be objectively and readily verified. This inquiry, the court went on to explain, focuses exclusively on the narrow threshold question of whether there is an inaccuracy in a credit report, not on the reasonableness of a credit reporting agency's errors. And it's an objective inquiry. It asks only if the alleged error is one that could be objectively verified, not, or if instead that error evades some kind of verification because it implicates an unsettled legal question or an unresolved legal dispute. It does not ask whether the specific credit reporting agency could have or should have verified the information itself. That's a separate, distinct inquiry. And in this case, the district court did not reach it. Unlike in Mater, the district court here adopted a far narrower definition of inaccuracy, holding that the credit reporting agency can only be held liable under section 1681EB when the information reported does not match the information furnished. In other words, in the district court's view, the only inaccuracy that counts under section 1681EB is a transcription error, regardless of how implausible or fictitious the furnished information is. But that rule can't be squared with the standard adopted by this court in Mater, which again holds that an inaccuracy occurs within the meaning of the statute if a credit reporting agency incorrectly reports a debt that can be objectively verified. And that standard applies regardless of whether a furnisher reported the same inaccuracy to the credit reporting agency. Now, following Mater here, I think makes quite clear that TransUnion's report contained an inaccuracy that fits squarely within the definition of 1681EB. And that's because the balloon payment that it reported simply doesn't exist. Although the car lease Ms. Sessa entered into required 36 monthly payments of $237, it did not contain any requirement to make a large payment at the end of the lease term once the monthly payments were complete. And that's evident from the face of the lease itself. And if you look at the lease, and it's in the record, there's a number of hard to read, maybe illegible examples, but JA111 is I think the place where the lease is actually legible. You'll see that it doesn't include a balloon payment requirement anywhere in its terms. On top of that, both the dealer who sold the car to Ms. Sessa and Hudson Valley Credit Union, the lesser, confirmed to Ms. Sessa that the lease included no balloon payment term and that Ms. Sessa owed nothing after completing her monthly lease payments. These facts easily satisfy Mater's standard. Although TransUnion falsely reported that Ms. Sessa owed a balloon payment under her car lease, that information is both objectively and readily verifiable, and it demonstrates that she did not. And that's all that's necessary to justify reversal here. In truth, TransUnion doesn't really quibble with most of this. It doesn't defend the district court's decision to adopt a transcription error standard for assessing inaccuracy under 1681EB, and it doesn't claim that the balloon payment it reported was in fact accurate. Instead, it asserts that it should be absolved from any liability under the statute because it had no reason to believe that the furnisher of the information, or the information itself for that matter, was unreliable, and it insists that credit agencies are ill-equipped to catch such kinds of inaccuracies. And I think that's wrong across the board. For starters, there is no reliable furnisher exception to section 1681EB's requirements. Just the opposite, courts have uniformly held that reliance on a third party's inaccurate information does not categorically immunize a credit reporting agency from liability under the statute. So does that mean that the reasonable measures that a CRA takes to ensure accuracy cannot either be entirely made up of, or even potentially partially made up of, screening measures and training measures for the furnishers? When you say that it's not enough to say this is a reliable furnisher, but here I think they're saying we know they're reliable because they went through our process. Sure. Is that not enough? It's a fact-specific question, Your Honor. I should say a case-specific question. In some cases, perhaps. In other cases, perhaps not. I have a further answer to that, but before I give it to you, I just want to clarify that what your question asks is a question about the reasonableness of the procedures. It's not a question that the district court decided in this case. The threshold question is the only question the district court decided, which is whether the actual information reported by TransUnion qualifies as an inaccuracy. Now, just elaborating one step further on your question about reasonableness, that question is, in the overwhelming majority of cases, a question for a jury. Did the credit reporting agency employ reasonable procedures designed, sufficiently designed, to assure maximum possible accuracy? And that, again, depends almost entirely on the nature of the alleged inaccuracy and a balancing between the costs associated with a credit reporting agency's ability to implement screens or other types of potential triggers to catch errors, and the benefit to a consumer that protecting a consumer from errors creates down the road. And your argument is that that issue of reasonableness of procedures is not before us because the district court relied entirely on the definition of accuracy or inaccurate information. That's correct, Your Honor. It didn't address that question, and of course, you know, this court is a court of review, not first view, and in our view, the appropriate step here would be to reverse on the threshold question of accuracy, but then remand to the district court so it can assess the question of reasonableness in the first instance. I will say, just to perhaps add a quota to that answer, that in only the rarest cases is reasonableness appropriate to be resolved at summary judgment. Now, I mentioned that earlier. Well, that's not before us, right? Nobody's granted summary judgment on reasonableness. It would not really be appropriate for us at this stage if we were to agree with you on the accuracy question to be telling the district court in advance how to engage in the review of reasonable procedures, which is something the district court hasn't done, right? Correct. Correct, Your Honor. And we think that that, in fact, is the appropriate course that this court ought to take. Yes. I see that I'm over time. Unless the court has further questions, I'll reserve the rest for rebuttal. Thank you. Why don't we hear from Mr. Cooper? Mr. Cooper, I think we've allocated five minutes to the CFPB. So, please. May it please the court, I'm Ryan Cooper here on behalf of the Consumer Financial Protection Bureau, which is participating in today's argument as amicus. There are two main points that I would like to make today. First, section 1681EB does not contain a wholesale exemption for all legal inaccuracies. That section requires credit reporting agencies to follow reasonable procedures to assure maximum possible accuracy. And that provision requires credit reporting agencies to guard against inaccuracies that could be characterized as factual, as well as inaccuracies that could be characterized as legal. In the legal inaccuracy in the text of section 1681EB. But we recognize that this court's recent decision in Maeder excludes certain legal inaccuracies from section 1681EB's scope. But Maeder also recognizes that credit reporting agencies have an obligation to guard against at least some types of inaccuracy that could be characterized as legal. In particular, this court's decision in that credit reporting agencies may have to screen for legal inaccuracies where the legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable. Under the Maeder framework, the district court here was wrong to hold that the inaccuracy wasn't cognizable under 1681EB for two reasons. The first is that the inaccuracy here is most naturally considered factual. Ms. Sessa simply did not owe a balloon payment. And no one has ever argued that she did. There's no bona fide dispute between the parties. The text of the contract is unambiguous. At no point has she ever owed this amount. And so it's simply factually incorrect to say that she owed a balloon payment that she did not owe. And it's difficult to conceive of a more basic, more elemental misrepresentation about a consumer's debt obligations than to state that a consumer owes an amount that they do not owe. And that sort of basic error, we believe, is a factual error, and it's therefore cognizable under Maeder. Can I ask you, how useful is it even to talk about distinctions between factual and legal errors? I mean, isn't the point of Maeder more that the question is whether the accuracy or inaccuracy is whatever it is, objectively and readily verified? And it would strike me that if we wind up getting into a jurisprudence of deciding what's legal and factual, I mean, almost any question can have a balloon payment. You say, well, it's true that I would owe that much if something happened, and that's a legal question because if I were to want to buy out the rest of my lease, then, I don't know, you could legally characterize it as a balloon payment. Is this even a useful exercise, or are we going to create a cottage industry of distinguishing between legal and factual? Well, it's a mixed question of law and fact. Why should we even be getting into that exercise and just asking instead, is it objectively and readily verified? And if, as Maeder says, we can't do it because there's an unresolved legal question, then we tell ourselves, okay, that's a reason why it can't be objectively and readily verified. Your Honor, I wholeheartedly agree and share your concern that framing what types of errors are cognizable under Section 1681 E.B. using a sort of factual-legal dichotomy could lead to a number of problems. A cottage industry of people characterizing basic factual errors, like the one at issue in this case is legal, and we think that distinction is not workable, and we don't think that that's the distinction that Maeder made, but I think you've characterized the case fairly. I think that what Maeder is saying is not that all legal and inaccuracies are exempt. I think Maeder is saying that's certain legal inaccuracies, those where there's a bona fide dispute, where there's an unsettled legal question. So I'm just going to the point you made, which I thought was, and I understand what you would make it to say, this is really a factual question. I guess what I'm asking, put another way, is do you think it would be inappropriate for this the exercise of trying to put it on one side or another of a factual-legal line, but instead saying something different, which is it is an inaccuracy, it is objectively and readily verified, and the escape hatch of Maeder is not triggered? We do not think that would be inappropriate. That's exactly what we would ask this Court to do. We think the inaccuracy here is based on information that's objectively and readily verifiable, therefore we think the inaccuracy was cognizable under Maeder, under the text of Section 1681 E.B., and we don't think that this Court needs to, nor that it would be constructive for this Court to sort of endeavor to categorize the inaccuracy as factual or legal, or to sort of lean into that dichotomy, which we think is unhelpful and unworkable. You did advert to having a second point, and I know I distracted you, even though you're past your time. Would you just very briefly tell us what that second point is you were going to get to? Yes, Your Honor, the second point that we were going to get to is simply, and I believe counsel for appellate has covered this, but we do not believe that a reliance on a on a furnisher automatically renders the information the furnisher provided accurate, and we don't think that reliance on a furnisher is per se reasonable. We think that's a fact-sensitive inquiry, and as you noted earlier, that's an inquiry that the District Court never even reached here, and so we agree with appellant that the appropriate course in this litigation would be to reverse the District Court on the basis that the error or the inaccuracy at issue here is in fact cognizable, and then allow that fact-bound inquiry as to the reasonableness of TransUnion's procedures to be decided in the first instance below. Thank you very much. I understand the next step would be, is it Mr. O'Neill next? Yes, Your Honor. Yes, please. May it please the court, Michael O'Neill on behalf of the defendant appellate TransUnion. I urge this court to affirm the District Court ruling on either one of the two alternative arguments we made to this court. First, as the District Court ruled, the alleged inaccurate reporting by TransUnion here is merely a legal inaccuracy that is not actionable under Section 1681 E.B. of the Fair Credit Reporting Act, for the reasons set forth by the Second Circuit in Mayor. Okay, so counsel, if it's a legal inaccuracy, then we get to the end of Ms. Sessa's lease, and she says, here's your Forester. Nice knowing you. I'm going to go. I don't want to buy it. Would the lender or the dealership, Curry and Hudson Valley, have the right, a legitimate claim to sue her for that $19,000 something? There's a legal basis for an argument that that is a balloon payment? I think there are arguments either way. I note that the Furnisher reported that balloon payment to Ms. Sessa every month of the lease, and she never disputed it then. Are you, you're talking about how it's reported, or, but I think the question was, would they have a colorable legal argument to sue her? Is that a yes or a no? You think they do have a colorable? As a lawyer who's been practicing for 35 years, Your Honor, I don't think so. I don't think so, but keep in mind, Your Honor, that TransUnion never had the opportunity to review the lease, and the District Court... A different story, and I understand you're transitioning to a different question, or a different issue, but I think what we're asking is, this is going back to the language of Maeder, is it objectively and readily verifiable? Right. And it seems to me that everyone agreed, I thought, that this is a balloon payment. I thought there was a concession from both sides. It's a balloon payment. It's not. And it is not a balloon payment. I'm sorry. It is not a balloon payment. It is simply an option at the end that if she wanted to buy out the lease, she could. Are you actually disputing that and saying that there is a legal doubt in anyone's mind that maybe it is a balloon payment? I thought everyone agrees it's not. And we've never taken a position on that, but I don't think that the furniture, that the credit union, would have a colorable claim. Different question. Oh, wait. Oh, you're saying that they wouldn't have. Oh, I see. That the credit furniture would not have a creditable claim. Right. So then how is it not an objectively, what's the language of Maeder, an objectively and readily verified thing that if you looked at the lease, there is no doubt in anybody's mind, there's no balloon payment. There's no debt here. Well, it's not readily determinable, Your Honor, because in both Ms. Sessa and the government say that TransUnion would have had to look at that lease to make the determination that you're suggesting. Neither one, by the way, suggests that TransUnion had an obligation to look at the lease. But isn't that a question of the reasonable procedures? Accuracy goes to whether it's true or not, right? And we all agree that it is an untrue fact that there's a debt. Well, the test in Maeder is not whether or not it's true or not, it's whether or not it's subjectively and readily determinable. And that's what I'm saying. And we all agree that we have readily determined it is an untrue fact, right? There is no debt. I think we've all TransUnion at the time of the recording. It did not have the lease. Again, both Ms. Sessa and the government say you need to look at the lease to make the determination. Okay, let's say this. Let's say the lease, this thing that, you know, is arguably a balloon payment. People are saying it's at zero dollars. It had a little number there and it said zero, right? I think you would agree that that's a fact, not a legal thing, right? If they had reported $12,000 or whatever the dollar amount, but if it said zero there, right? Your argument, though, would be the same to say, well, how would you know that unless you looked at the lease? But that doesn't make it a legal question as opposed to a factual question, right? Well, Your Honor, these issues primarily come up when the consumer disputes the information. No, no, no. Hang on. Just stay with my question. If this lease, instead of the thing that was reported as a balloon payment being a large dollar amount, on this document said zero, right? Let's say at the end of the lease she was allowed to just say, I want the car and she got it for free. And it said zero. Seems to me your argument that, well, it's not objectively verifiable by TransUnion because they'd have to look at the lease, doesn't really answer what I thought was the distinction you've been trying to say that look, yes, factual inaccuracies come in, but legal not. Or are you just saying the transcription, you're eschewing the factual legal distinction completely? Oh, no, Your Honor. As we've made clear in our brief, that single sentence in the 23-page opinion of the district court is not the basis for the opinion. We don't disagree with the argument that only transcription errors could be the basis for liability under the statute. It's pure dictum. And I would suggest that even if this... Which part is pure dictum? The single sentence that Ms. Cessna's counsel referred to, that credit bureaus can only be held responsible if they do not accurately report what the furnisher reported. I don't think that's a true statement. And it's not the rolling of the court, it's pure dictum. The rolling of the court, consistent with Mader, is that legal inaccuracies are not actionable under the statute. So if this court, like Trangian District... So I guess that's what I'm getting at, right? If factual... You're agreeing factual inaccuracies can be actionable, right? Yes. So that's what I'm saying, is that if this lease had a zero dollar amount listed in the box, right? If we look at that lease and it has zero. I don't understand why you're saying, well, that could be actionable because it's a fact, but the characterization of it as a balloon payment is not actionable as a fact. And you say, well, the reason you can't is because you'd have to look at the lease. Well, either way, the only way you can know whether it's right or wrong is to look at the lease. That doesn't tell us. I don't see how that helps us decide the fact legally. If the reporting by the furnisher was that a zero dollar balloon payment was owed? No, I'm saying if they reported whatever the dollar amount is, I can't remember. 19 something. 19,000 something. They report 19,000, but it says clear as day over here, zero. Lord knows where 19,000 came out of. How does that... What's the difference? Because either way, the only way TransUnion can know that it's right or wrong is by looking at the lease. And you seem to be suggesting because you have to look at the lease, that makes it a legal issue. But what I'm saying is you could have a factual issue where, again, the only way to prove it's wrong is to look at the lease. Well, I think that under this court's ruling in Mader, that would be a factual inaccuracy. But it doesn't mean that TransUnion would then be liable. Then you go to the procedures argument. And I think, Your Honor, it really is important. And the Second Circuit in Padel, which supports our alternative argument, said the mere fact that the consumer did not dispute the information with the credit bureau meant that the credit bureau could rely upon the furnisher. And it's really important. As you well know, the fair credit... Now, that goes to the reasonable procedures? Well, actually, I wouldn't call it the reasonable procedures argument. I would call it that a credit bureau can rely upon the accuracy of the data received from a data furnisher unless it can't. And the reason why... But isn't that why they can rely on it, right? Isn't that another way to say that they had reasonable procedures? That can't go to whether it is, in fact, an accurate or inaccurate statement. In the Padel v. Diners Club case, there was no examination of the reasonable procedures. But the whole credit reporting system is based upon the furnishers had their own accuracy duties. And here, TransUnion not obligated the furnisher to meet its obligations to report only accurate information and then additionally contractually obligated it to report accurate information. TransUnion credentialed the data furnisher, monitored the data that was coming in, and never had any reason to believe that this one remark on one account was inaccurate. The Fair Credit Reporting Act has a procedure by which consumers can dispute information with credit bureaus. Ms. Sessa could have delivered the lease to TransUnion. TransUnion is then obligated to go to the credit union and say, is this right or is this wrong? That's how these things occur. That's when the duty to investigate is implicated. There's no duty on the credit bureaus to investigate data when it comes in the door. I guess I don't see how everything you're saying doesn't fit under the rubric analytically of whether TransUnion has reasonable procedures. And they may be convincing arguments to say this is exactly how credit agencies should be operating. This is sensible. It is reasonable. This is exactly what we want them to do. And that makes your point. I suppose that they're reasonable. Maybe they are. Maybe they're not. But I don't see how that goes to whether something is accurate or not. Well, I agree, Your Honor. It's a different issue. Okay. So now you're talking about the reasonableness. But my question there is, why would we be deciding the question of whether these are reasonable procedures when the district court didn't have an opportunity to rule on that? Why wouldn't we just leave that unremanded? The court is permitted to, and often does, as in Mater, affirm on different grounds. These grounds were presented to the district court. And frankly, not only the Sarver decision on the summer, the Sixth Circuit and the Eighth Circuit adopted this exact rule, that until the plaintiff can offer evidence that the credit bureau could not rely upon the accuracy of the data, it can do so. And that's our alternative argument, Your Honor. I understand. Thank you very much. We now will hear from amicus on the other side. Is it Jacoby? Jacoby. Jacoby. I'm sorry. So Ms. Jacoby, you have five minutes, please. May it please the court. Zoe Jacoby on behalf of the Chamber of Commerce and a coalition of amici in support of TransUnion. I'd like to make two points today in response to the Bureau's argument. The first is that Mater did distinguish between legal disputes and factual inaccuracies, and that's binding law of the circuit. And the second is that Mater's regime is correct under the statute. It's workable. And this court shouldn't water it down as the Bureau proposes. So I'll start with what Mater actually said. Mater said, and these are quotes from page 270 of the opinion, claims under the FCRA require factual inaccuracies to be actionable. Also, inaccuracies that turn on legal disputes are not cognizable under the FCRA. So Mater plainly distinguished between factual inaccuracies and legal disputes. It used that language that we've been talking about, objectively and readily verifiable, to explain why that distinction is correct. Interpreting the key language here, accuracy, the court looked at the plain meaning of that text based on contemporary dictionary definitions and recognized that the word accuracy requires a focus on objectively and readily verifiable information, and that's where it gets the distinction between factual inaccuracies and legal disputes. How do you deal with mixed questions of law and fact? We as a court deal with this all the time when we're looking at our standards of review, right? Typically we will review legal questions de novo, we will review factual disputes for clear error, factual findings for clear error, and then you have the question about mixed questions of law and fact, and we may apply different standards in different circumstances. How do you deal with things that involve an application of law to fact? In general, the application of law to fact will present a legal issue. I think it's important to remember here that... And why doesn't every factual issue arguably involve the application of law to the fact? I mean, for example, here, you know, you have the fact, I suppose, could be what is printed on this form, and then you could say, well, legally, is it a balloon payment? Well, we determine the question of whether it is legally a balloon payment by seeing that there's nothing on the form that says it's a balloon payment. Is this fact or law? Is it fact or law? In this particular case, our brief focused on encouraging this court to adopt the law-fact distinction that it did in Mader, and our primary purpose here is to urge the court not to water that down, not focusing on the application. I'm trying to see how does that play out, and you can use this as an example, even There certainly are factual disputes that don't involve any unsettled legal questions, interpretive questions at all. For example, and this is something that Congress was contemplating when it enacted the FCRA, a debt that might be attributed to someone with an entirely different name, the wrong person. That's a factual question. There's no legal principle to apply. There's no dispute. There's no interpretation entailed. So there are certainly lots of factual questions. I think it's also important that the regime that exists under Mader is workable, going to my second point. Counsel for the Bureau suggested that it's somehow unworkable to distinguish between law and fact, and you raised mixed questions, but this is a regime that exists under the current law. District courts routinely distinguish between fact and law. Courts of appeals, as you know, distinguish between fact and law when they're deciding what standards to apply, and there may be some difficult questions on the margin, but on the whole, it's a workable regime, and importantly, it's been working in the four other courts of appeals that have applied that proposed by the Bureau is actually far more unworkable. Counsel, you're teeing this up as the Bureau is asking us to water down Mader, but aren't you overstating Mader? Mader doesn't say, just as you conceded that there are some factual questions that have no law, there are some legal questions that even though they involve legal questions, Mader says, these are the kinds of things we expect a CRA to address, questions of settled law that are plain. Again, this all boils down, as Judge Nardini was asking some of the other counsel, to the question of readily and objectively verifiable, right? It's not as bright a line. I think you're asking us to actually make Mader more dramatic and draw that line more sharply than it does, as opposed to what you're saying your opposing counsel wants us to do, which is water it down. I don't agree, Your Honor. I think in context, that quote from Mader you referenced about settled law, I think in context, it's clear that Mader is talking about the situation in which a consumer goes to court, sues a creditor, and actually gets an adjudication from a court on their specific debt, at which point if the court has discharged that consumer's particular debt, it's no longer a legal dispute. It's factually inaccurate to continue to report it. The court was citing the Eleventh Circuit's Loesch case in which that happened, and so I think it's clear that that's what it's talking about when it refers to application of settled law to fact. It's not trying to draw distinctions between, you know, how many courts have to weigh on an issue before it's truly settled or unsettled. It's clear that it does not mean that credit reporting agencies are never required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts, and then later that quotation I referred to earlier actually says, if a legal question is sufficiently settled so that the CRA has to deal with that. It's not just saying that if Mr. Jones's debt has been declared valid or invalid, they should be required to acknowledge that. It's saying that if the law itself is settled and it says, look, these are never valid debts or these are always valid debts, that's sufficient to require the CRA to verify. I see that my time has expired. Do you mind if I answer? Yes, please. I think that to the extent Mader suggests that there may be a narrow category of cases in which the law is sufficiently settled, it's important to remember that's not going to be the mind run of cases. After all, we're talking about CRAs here and their credit personnel are laypeople. They're not lawyers. So it may be the case that there are certain cases, certain issues that you or I as lawyers can readily apply settled law to facts, but that's not going to be the case for the CRAs for whom the FCRA creates a regime. And I think it's important to consider that in ensuring that Mader not be watered down. For those reasons, we urge this court to affirm. Thank you very much. We'll go back to Mr. Wessler now. You have reserved three minutes for rebuttal. I have, Your Honor. I don't think it will take that much time. I do want to just make two quick points. The first is that you heard TransUnion's counsel concede that the inaccuracy reported here was a factual inaccuracy because it was objectively and readily verifiable. That's fatal to its position on appeal, regardless of whatever it is, the reasonableness of its ability to catch the error. So for that reason alone, reversal here is warranted. I do want to spend just maybe 30 seconds on this question about legal factual distinction because, Judge Nardini, I think you are entirely right that in some ways that kind of inquiry is a fool's errand. In the FCRA context, almost every kind of debt instrument in some document involves some kind of legal question. But it ultimately isn't very helpful when trying to ascertain whether the inaccuracy that exists or that is alleged to exist is cognizable as something that should have been caught under a CRA's reasonable procedures designed to ensure maximum possible accuracy. And so I think what the sort of thrust of Mader is, is while, you know, that kind of spectrum can get blurry in the middle, ultimately we ask a different question, which is whether or not the information reported is, as you said, and as Mader says, readily and objectively verifiable. And sometimes there are legal questions that are capable of being readily and objectively verified. They may require a CRA or someone to have a certain amount of legal knowledge. The Mader opinion makes that point. Just below the passage, Judge Merriam, that you quoted from Mader, the court says that decisions that might be reflected in credit reports sometimes, and I'm quoting here, no doubt involve some knowledge of the legal impact of court decisions. So that's an element of inaccuracy of determining whether something is objectively and readily verifiable. But ultimately, in this case, Mader here I think supplies a clear and definitive answer that the district court's understanding of inaccuracy within the meaning of the statute was wrong, and for that reason, we urge reversal. Thank you. And I'll just confirm, Judge Cabranes, you have no further questions? I have no further questions. I have no questions. Poorly phrased on my part. Thank you all very much. We will take the case under advisement. Court will stand adjourned.